**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ERIC ZIPP, WILLIAM J. WALKER, JR.,**
**and MICHELLE MARKOTA,**

        **Plaintiffs,**

**-vs-**                                                    **Case No. 6:08-cv-1638-Orl-28GJK**

**WORLD MORTGAGE COMPANY,**
**WORLD SAVINGS BANK FSP, GOLDEN**
**WEST FINANCIAL CORP., WACHOVIA**
**MORTGAGE CORPORATION, and**
**WACHOVIA CORPORATION,**

        **Defendants.**
_____/

# ORDER

Plaintiff—current or former employees of Defendants—assert that Defendants did not pay them overtime as required by the Fair Labor Standards Act ("FLSA") FLSA when they worked more than forty hours per week. In addition to their FLSA claim (Count I), Plaintiffs also allege two counts (Counts II and III) alleging violations of the Employee Retirement Income Security Act ("ERISA"). The case is currently before the Court on Defendants' Motion to Dismiss Plaintiff Walker's ERISA Claims (Doc. 25).[1] Plaintiff Walker has filed a response (Doc. 34).

## I. Background

The Complaint names five Defendants—World Mortgage Company ("World

---

[1]The claims of Plaintiffs Zipp and Markota are not at issue in the motion or this Order.

Mortgage"), World Savings Bank, F.S.B. ("World Savings"), Golden West Financial Corporation ("Golden West"), Wachovia Mortgage Corporation ("Wachovia Mortgage"), and Wachovia Corporation. Defendants World Mortgage and World Savings are described as originators and servicers of residential mortgage loans and as subsidiaries of Defendant Golden West, formerly a savings and loan holding company. (Doc. 2 ¶¶ 9-11). Wachovia Mortgage, in turn, is described as a subsidiary of Wachovia Corporation. (Id. ¶ 12). Golden West allegedly was acquired by Wachovia Corporation in October 2006, and Wachovia Corporation is alleged to be "the successor in interest" to Golden West, World Mortgage, and World Savings and to be the Plan Sponsor of these Defendants' employee benefit plans. (Id. ¶¶ 11, 13).

The Complaint alleges that Plaintiff Walker was employed by Defendants from June 2003 to January 2006 and was a participant in Defendants' pension and savings plans. (Id. ¶¶ 7 & 35). Walker allegedly was employed by Defendant World Mortgage or Defendant World Savings as an appraiser and was improperly classified as an "exempt" employee under the Fair Labor Standards Act for the purpose of payment of overtime; as an "exempt" employee, Walker was not paid overtime when he worked more than forty hours in one week. (Id. ¶¶ 7, 23, & 30).

In their motion to dismiss, Defendants note that Plaintiff could not have been an employee of Wachovia Corporation or Wachovia Mortgage because Defendant Golden West was not acquired by Wachovia Corporation until October 2006—nine months after Plaintiff Walker ceased his employment. Defendants also note that although the Complaint alleges that Plaintiff participated in Defendants' "Pension and Savings Plans," Golden West did not

have a "defined benefit or cash balance 'Pension Plan,'" but it did maintain a "World Increased Savings for Employees" Plan—known as the WISE Plan—for its employees and for World Mortgage's employees. (Doc. 25 at 4). Defendants assume for the purposes of their motion to dismiss that the plan at issue is the WISE Plan, and, in light of the lack of any clarification or objection by Plaintiff Walker,[2] the Court does so as well.

The WISE Plan provides that employees may elect to defer a percentage—from 2% to 20%—of their "Compensation" and to have the deferred amounts credited to their WISE Plan account. (WISE Plan, Ex. B to Doc. 25, at 13-14). "Compensation" is defined in the WISE Plan as "the wages, salaries, fees for professional service and other amounts paid by an Employer to an Employee . . . for personal services actually rendered by the Employee." (WISE Plan at 3; see also Wise Plan Summary Plan Description, Ex. C to Doc. 25, at A10-2 ("'Pay' (for purposes of contribution calculations) is your total cash compensation, including base salary, commissions, overtime pay, and bonuses.")).

In his two ERISA counts, Plaintiff Walker alleges that Defendants violated 29 U.S.C. § 1059(a)(1)[3] by "fail[ing] to maintain records with respect to each of [their] employees sufficient to determine the benefit accrual rights of Pension Plan participants," (Doc. 2 ¶ 62),

---

[2]In his response (Doc. 34), Plaintiff Walker does not address the issue of what plan is at issue, nor does he challenge Defendants' assumption that the WISE Plan is the correct plan. Instead, Plaintiff Walker merely reiterates the Complaint's general references to "the Savings and Pension Plans." (See id. at 5-6).

[3]This section provides in part that "every employer shall, in accordance with such regulations as the Secretary may prescribe, maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1).

and that Defendants breached "fiduciary duties by failing to credit compensation due for overtime . . . as Eligible Compensation under the Savings Plan and Pensionable Pay under the Pension Plan," (id. ¶ 72). Plaintiff purports to seek injunctive relief in both counts; for example, in Count III Plaintiff seeks "an injunction requiring Defendants to credit all members of the ERISA Class with Eligible Compensation under the Savings Plan and Pensionable Pay under the Pension Plan for all of the past and future overtime work performed by those Class members and any such other equitable relief as this Court deems appropriate." (Id. ¶ 73). Defendants seek dismissal of Counts II and III.

## II. Discussion

### A. Legal Standards

Defendants have moved to dismiss both of the ERISA counts pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action. Federal Rule of Civil Procedure 8(a)(2) provides that "a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially

noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).     B

The Merits of Defendants' Motion to Dismiss

Defendants contend that in Counts II and III Plaintiff Walker is seeking an ERISA remedy for an FLSA violation and that the ERISA claims duplicate or depend upon the FLSA claims in Count I. Defendants make several arguments. First, they contend that the "catchall" provision of ERISA—29 U.S.C. § 1132(a)(3)—cannot be relied upon to provide a private right of action to enforce the recordkeeping violations alleged in Count II. Second, Defendants aver that Plaintiff Walker is seeking legal relief in the guise of equitable relief. Third, Defendants assert that ERISA does not impose a duty on a plan fiduciary to "police" an employer's compliance with the FLSA's overtime provisions or to make independent determinations regarding whether an employer's records are accurate under employment laws. Finally, Defendants assert that even if Plaintiff can bring ERISA claims, he has failed to exhaust his administrative remedies.

Plaintiff Walker is not the first plaintiff to bring ERISA claims that derive from an alleged FLSA overtime violation. The parties cite competing case law from throughout the country—primarily district court decisions—on the issue of whether viable ERISA claims are stated where the underlying act at issue is the failure to pay overtime.

Plaintiff Walker relies on several decisions in which courts have denied motions to dismiss ERISA claims on similar facts. For example, in Rosenburg v. IBM Corp., No. C 06-0430 PJH, 2006 WL 1627108 (N.D. Cal. June 12, 2006), the plaintiff brought both recordkeeping and fiduciary duty claims under ERISA after being allegedly misclassified as exempt from FLSA overtime requirements. The court acknowledged that the issue of

whether IBM was acting as a fiduciary was a "close call" and then found that it presented a factual issue that could not be resolved at the motion-to-dismiss stage. Id. at *5. The court also found that the claims could be brought as injunctive relief claims under the catchall provision of ERISA, 29 U.S.C. § 1132(a)(3), rather than as claims for benefits under 29 U.S.C. § 1132(a)(1)(B), and that exhaustion of administrative remedies was therefore not required. Id. at *5-8. Finally, the Rosenburg court concluded that the ERISA claims were not rendered unripe merely because they were dependent on the plaintiff's FLSA claims. Id. at *8-9.

In another case cited by Plaintiff Walker, In re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation, No. MDL No. 33-1439(B), 2005 WL 1972565 (D. Or. Aug. 15, 2005), the court found that plaintiffs were not precluded from suing under the catchall provision to enjoin the alleged recordkeeping violation. Id. at *3-4. With regard to the breach-of-fiduciary duty claim based on failure to credit overtime, the Farmers court noted that "Plaintiffs draw a very fine line between business and fiduciary decisions in pressing this novel theory" but nevertheless declined to dismiss the claim. Id. at *4-5.

Plaintiff also relies on Mathews v. Chevron Corp., 362 F.3d 1172 (9th Cir. 2004), wherein the plaintiffs sought and obtained an injunction in the district court requiring the defendant to modify retirement plan records to reflect that they were involuntarily terminated and therefore eligible for a particular type of benefit. In affirming the award of injunctive relief, the Ninth Circuit noted that "[o]n its face, an order to modify plan records is not an award of money damages" and that "[a]lthough in this instance the district court's remedy will result in Chevron paying plaintiffs 'sums of money' equivalent to the . . . benefits they lost

because of Chevron's breach, the mere payment of money does not necessarily render the award compensatory 'monetary damages.'" Id. at 1186. The district court in Gerlach v. Wells Fargo & Co., No. C 05-0585 CW, 2005 U.S. Dist. LEXIS 46788 (N.D. Cal. June 13, 2005), relied on Mathews in denying a motion to dismiss ERISA claims like those in the case at bar. Other cases have also recognized this type of claim as viable under ERISA. See, e.g., Matthews v. ALC Partner, Inc., No. 2:08-10636, 2008 WL 5188760, at *3-7 & n.3 (E.D. Mich. Dec. 9, 2008) (noting split in authority and declining to dismiss ERISA claims, but noting that if the plan at issue—not in the court record at the point—pegged benefits only to compensation actually paid, plaintiffs were "encouraged to voluntarily dismiss their second claim for relief"); Stickle v. SCIWestern Mkt. Support Ctr., L.P., No. CV 08-083-PHX-MHM, 2008 WL 4446539, at *16-19 (D. Ariz. Sept. 30, 2008) (rejecting the defendants' arguments that ERISA claims were unripe because they were dependent on FLSA claims and that there was no private right of action for the recordkeeping claim; finding that exhaustion of administrative remedies would be futile; and concluding that "[u]nder ERISA, crediting hours is a fiduciary function . . . subject to ERISA's strict fiduciary standards"). Thus, there clearly is authority supporting Plaintiff Walker's position.

The cases cited by Defendant, however, take a different view of these types of claims. In Premick v. Dick's Sporting Goods, Inc., No. 02:06cv0530, 2007 WL 141913 (W.D. Pa. Jan. 18, 2007), the plaintiff brought ERISA claims just like those in the instant case, arguing that he had been misclassified by his employer as an "exempt" employee and that as a result, required records were not kept and credits were not made for actual overtime worked. The court dismissed both ERISA claims, concluding that ERISA did not provide a private

cause of action for the first claim and that the claim was one for benefits—that is, damages—rather than for equitable relief. 2007 WL 141913, at *6. The Court further found that the plaintiff had not pled that he had exhausted his remedies under the plan at issue. Id. at *6. With regard to the breach-of-fiduciary duty claim, the court found that the claim was essentially a claim for benefits under the plan as to which administrative remedies had not been exhausted. Id. at *7.

In Ballaris v. Wacker Siltronic Corp., No. Civ.00-1627-KI, 2002 WL 926272 (D. Or. Feb. 7, 2002), the plaintiff brought ERISA claims, as in the instant case, based on failure to maintain records and on withholding plan contributions—both arising from failure to pay overtime that was allegedly due. The Ballaris court concluded that the defendant was not acting as an ERISA fiduciary when the decision regarding pay was made, and the ERISA claims were dismissed on that basis. 2002 WL 926272, at *2.

In another case, the court focused on the Plan language in dismissing ERISA claims arising from alleged overtime violations. Like Plaintiff Walker here, the plaintiffs in Maranda v. Group Health Plan, Inc., Civ. No. 07-4655 DSD/SRN, 2008 WL 2139584 (D. Minn. May 20, 2008), were classified as "exempt" employees for the purposes of the overtime requirements of the FLSA, and they brought ERISA claims alleging that the defendant breached its fiduciary duty when it failed "to account for overtime in administering the Plan." Id. at *1. The defendant argued that plan contributions were based on compensation "actually paid to the employee, not on allegedly owed overtime pay." Id. The Maranda court agreed with the defendant's position, finding that the defendant "had no obligation to make contributions based upon overtime hours for which plaintiffs received no actual

-8-

compensation and was indeed following the terms of the Plan when it did not make such contributions." Id. at *2. The Court noted that any misclassification as an "exempt" employee "does not concern the Plan" and concluded that the claim asserted was "only a FLSA claim." Id.

In LePage v. Blue Cross & Blue Shield of Minnesota, Civ. No. 08-584 (RHK/JSM), 2008 WL 2570815 (D. Minn. June 25, 2008), the court began its discussion of the ERISA claims—again, claims stemming from alleged FLSA overtime violations—by stating: "Blue Cross has set forth many arguments in support of its [motion to dismiss], but the Court need only address one: are Plaintiffs' ERISA claims legally cognizable? The Court concludes that they are not." Id. at *5. The LePage court then explained its reasoning:

> Setting compensation levels is a business decision or judgment made in connection with the on-going operation of a business. Consequently, ERISA does not govern Blue Cross's business decision about how to classify an employee for payroll and FLSA purposes. Nor do Plaintiffs dispute this. Instead, they make the very fine distinction that Blue Cross, as plan administrator, has a fiduciary duty to double-check this business decision and evaluate whether employees had some legal claim to additional compensation. But no such duty exists[.] An employer's discretion in determining salaries is a business judgment which does not involve the administration of an ERISA plan or the investment of an ERISA plan's asserts. Such a decision may ultimately affect a plan indirectly but it does not implicate fiduciary concerns regarding plan administration or assets. Business decisions can still be made for business reasons, notwithstanding their collateral effect on prospective, contingent employee benefits. ERISA clearly states that a fiduciary must discharge its duties "in accordance with the documents and instruments governing the plan . . . ." Thus, Blue Cross, as plan administrator, has a fiduciary duty to credit Plaintiffs with the compensation that is required to be credited *under the terms of the plan*.
> . . . Notably, the terms of the 401(k) Plan do not impose

> a duty to double-check the employer's compensation determinations or investigate whether each employee might have a legal claim that could produce additional compensation. To the contrary, the 401(k) Plan only requires that participants be credited for compensation that was *actually paid* to them.
>
> The crux of Plaintiffs' argument is that Blue Cross had a fiduciary duty to credit them for unpaid overtime. But Plaintiffs were never actually paid overtime. And under the terms of the 401(k) Plan, Eligible Earnings do not include compensation that should have been paid. Thus, Blue Cross followed the terms of the Plan when it did not make contributions based upon overtime hours for which Plaintiffs received no actual compensation. So there are no records to correct because they properly reflect the compensation actually paid to the Plan participants. And Blue Cross's decision not to pay Plaintiffs overtime does not pertain to the administration of the 401(k) Plan; rather[,] it is a business decision and, though the decision may have impacted Plaintiff's benefits under the Plan, it does not state a claim for breach of fiduciary duty under ERISA. Inescapably then, Plaintiffs' ERISA claims are not based on any "duty with respect to the plan"; rather, they are based solely on the claim that Blue Cross, in its role as employer, should have paid them overtime. As such, Plaintiffs have failed to state a legally cognizable claim with respect to the retirement plan at issue.

Id. at *5-6 (citations, footnotes, and internal quotation omitted).

The LePage plaintiff cited many of the decisions relied upon by Plaintiff Walker in the instant case, but the court was not persuaded by them, finding that "they did not adequately address whether there is a fiduciary duty to review an employer's business decision for classifying employees as exempt or nonexempt for payroll purposes and a corresponding fiduciary duty to investigate whether the employees had some legal claim to additional compensation." Id. at *7. The LePage court then explained:

> Furthermore, the decisions relied upon by Plaintiffs did not address the policy implications of recognizing such a sweeping fiduciary duty. In this case, Plaintiffs draw an extremely fine line between business and fiduciary decisions—namely, that a plan

> administrator has a fiduciary duty to second guess the employer's classification of all of its employees as exempt or nonexempt. Such a far-reaching duty would send the administration of the plan into gridlock and dramatically increase the cost of administering the plan. And the Supreme Court has repeatedly warned that Congress did not intend that ERISA be "a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering . . . benefit plans in the first place."

Id. (citation omitted) (alteration in original).

Six weeks after the LePage decision was issued, a district court in Michigan discussed it with approval and further explained the policy implications of a contrary ruling. In Steavens v. Electronic Data Systems Corp., No. 07-14536, 2008 WL 3540070 (E.D. Mich. Aug. 12, 2008), the court noted that none of the cases relied upon by the plaintiffs—the same decisions relied upon by Plaintiff Walker here—"adequately addressed the specific language of the benefits plans at issue and none attempted to address whether there is a fiduciary duty under ERISA, consistent with Congress's intent, to review an employer's business decisions and/or an employee's potential legal claims." Id. at *3. After describing and approving both LePage and Maranda, the Steavens court opined:

> The problem with Plaintiffs' argument, as recognized in LePage, is that it is unworkable under ERISA. Plaintiffs readily concede that Defendant can make business decisions that adversely impact their benefits without running afoul of ERISA. Nevertheless, Plaintiffs seek to impose a fiduciary duty on Defendant to investigate its business decisions in order to avoid the possibility . . . that a plan participant would be deprived of pension credits if an employer illegally withheld wages. But the fact is that "[s]etting compensation levels is a business decision or judgment made in connection with the on-going operation of a business," and both legal and illegal business decisions can have negative impacts on benefits plans. Why, then, should a fiduciary not be required to oversee all business decisions

-11-

> regardless of their legality? The reason is that Congress did not enact ERISA to govern the propriety of any decisions made in the capacity of an employer. The propriety of those decisions is governed by other federal statutes.
>
> The practical effect of the duty proposed by Plaintiffs (i.e., automatically crediting employees for wages that should have been paid but were not) is that an ERISA fiduciary would have to oversee employers' business decisions to ensure that those decisions did not deprive any employee of a wage that should have been paid. Thus, if Plaintiffs' claim were to stand, an ERISA fiduciary would be required to regulate purely corporate behavior, a result Congress did not intend. To the contrary, the focus of ERISA is on the management and administration of benefits plans. Congress only sought to impose fiduciary duties on decisions dealing with plan management and administration to ensure that the funds promised to employees would be invested wisely and managed honestly. If Congress intended for ERISA fiduciaries to monitor and second-guess employers' business judgments to ensure they complied with various employment laws, allowing employers to act as ERISA fiduciaries is an awkward way of doing so.

Id. at *4-5 (citations omitted) (second alteration in original).

Having considered the case law on both sides of the issues presented, this Court concludes that the decisions favoring Defendants' position are the better-reasoned. As did the LePage court, this Court finds that inquiry begins and ends with the conclusion that the ERISA clams are not legally cognizable. The business decision whether to classify employees as "exempt" or "nonexempt" for FLSA overtime purposes may have an impact on an ERISA plan, but that does not render the claims based on that classification decision ERISA claims. Moreover, with regard to the recordkeeping claim,[4] Plaintiff Walker does not

---

[4] Plaintiff Walker also relies on the Eleventh Circuit's decision in Combs v. King, 764 F.2d 818 (11th Cir. 1985), in support of his recordkeeping claim. However, Combs does not compel the conclusion that a viable claim is stated in Count II here. In that case, the plaintiffs were the trustees of several trust funds under a union contract; they sued "to

-12-

allege that Defendants failed to keep records as required by ERISA; he argues in essence that the records that *were* kept are *incorrect* due to the classification decision. Again, that underlying decision is an employment decision, not an ERISA Plan decision. And, with regard to crediting of compensation, the terms of the WISE Plan define compensation as "amounts *paid* by an Employer to an Employee," (Ex. B to Doc. 25, at 3 (emphasis added)), not amounts earned; thus, by crediting the Plan based on actual compensation paid—which is what Plaintiff Walker alleges Defendants did—Defendants were acting in accordance with the Plan terms.

In sum, for the reasons stated by the LePage and Steavens courts, this Court finds that Counts II and III of the Complaint in this case fail to state actionable claims.

---

recover alleged deficiencies in payments to the funds," "sought an injunction requiring the defendant to perform all obligations imposed by ERISA, the Wage Agreements, and the Trusts," and demanded that the defendant present all records regarding hours worked for inspection or copying. Id. at 819.

After noting that "[t]he legislative history of ERISA demonstrates that it was enacted, at least in part, to increase the information and data available to participants," id. at 822, the Eleventh Circuit concluded that "[t]he plain language of the statute clearly places a duty upon the employer to maintain records that will permit a determination of when the benefits are due for employees as well as the information necessary to enable the plan administrator to develop reports which are required by statute," id. at 823. The court elaborated that the employer "had a duty to maintain records that would enable the Trustees to determine the accuracy of her contributions"; the employer had "submitted the reports which included the number of hours worked by her employees, [but] the Trustees were entitled, under the contract and the under the common law of trusts[,] to investigate the underlying records supporting these reports." Id. at 824-25.

The facts of Combs are distinguishable from those of the instant case, and the Eleventh Circuit's ruling in that case does not mean that Plaintiff Walker is entitled to an injunction under ERISA with regard to records. Plaintiff Walker does not allege that Defendants did not maintain records that would allow a determination of their accuracy should that accuracy be called into question; he alleges that the records are inaccurate because of his overtime classification. This is beyond the holding of Combs.

Accordingly, Defendants' Motion to Dismiss Plaintiff Walker's ERISA Claims (Counts II and III) (Doc. 25) is **GRANTED**. Plaintiff Walker's Counts II and III are hereby **dismissed with prejudice**.

**DONE** and **ORDERED** in Orlando, Florida this 25th day of June, 2009.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record